■ MERCHANT FACTORS CORP., Respondent-Appellant, v WOLFSON, KAPIT, MELZER, MILOWSKY, ETTINGER & WIESELTHIER, P. C., Appellant-Respondent. [645 NYS2d 306] —Judgment of the Supreme Court, New York County (Stuart Cohen, J.), entered May 3, 1995, which, after a non-jury trial, awarded plaintiff $351,595.38, is unanimously modified, on the law and facts, to establish May 12, 1992 as the cut-off date for accrual of damages and increase the award to plaintiff to $696,000, and otherwise affirmed, without costs or disbursements.

Defendant Wolfson, Kapit, Melzer, Milowsky, Ettinger & Wieselthier, P. C. (WKM) was the accountant for E.Z. Sports and introduced this company to plaintiff, a small factor, as a potential new client. As a result, plaintiff and E.Z. Sports entered into a Discount Factoring Agreement on August 23, 1990. It is undisputed that WKM, in furnishing plaintiff financial statements of E.Z. Sports, departed from accepted accounting practices and that WKM's relationship with the plaintiff nonclient amounted to privity. The issues for resolution by the Trial Justice, sitting as finder of fact, were whether WKM's failure to properly prepare the financial statements was a proximate cause of plaintiff's injuries, and, if so, the extent of the damages. While the court determined Merchant . Factors could rely on the financial statements, it found that plaintiff should have known it was being defrauded and could no longer rely on the statements as of December 31, 1991, and, therefore, calculated damages as of this date.

The IAS Court erroneously relied upon three "reports" from plaintiff's field examiner as putting plaintiff on notice of the fraud. However, these reports simply addressed improvements in E.Z. Sports recordkeeping procedures that should be implemented to ensure the accuracy of the WKM review reports. In response, WKM set forth the changes it would implement in the record and bookkeeping procedures and plaintiff's field examiner later confirmed that these changes were made. Contrary to the conclusion reached by the IAS Court, the field examiner's reports do not indicate that either he or plaintiff was aware of a fraud as early as December 31, 1991. In addition, despite a large number of charge-backs, there was still adequate collateral in the form of accounts receivable to cover the loan balance, and plaintiff was given a reasonable explanation from E.Z. Sports for the charge-backs.

Plaintiff first became aware that E.Z. Sports invoices were being paid by an entity other than the alleged purchasers of the goods on May 12, 1992 and on that date immediately ceased advancing funds to E.Z. Sports and stopped relying on the financial statements from defendant. Accordingly, its damages should have been determined from that date, and, upon review of the record, we conclude that the award to plaintiff should be increased to $696,000 because of the additional sums advanced from December 31, 1991 to May 12, 1992. Concur—Murphy, P. J., Wallach, Ross, Nardelli and Williams, JJ.